IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KELLY ANN SHAEVITZ, )
)
Plaintiff, )
) No. 13 C 1721
v. )
) Magistrate Judge
CAROLYN W. COLVIN,[1] ) Jeffrey T. Gilbert
ACTING COMMISSIONER OF )
SOCIAL SECURITY, )
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

Claimant Kelly Ann Shaevitz ("Claimant") brings this action under 42 U.S.C. § 405(g) seeking reversal or remand of the decision of Respondent Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits under Title II and supplemental security income under Title XVI of the Social Security Act. The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1 for all proceedings, including entry of final judgment. ECF No. 11.

This matter is before the Court on the parties' cross-motions for summary judgment. ECF Nos. 19, 32. For the reasons discussed herein, the Commissioner's motion for summary judgment (ECF No. 32) is denied. Claimant's motion for summary judgment (ECF No. 19) is granted, and this matter is remanded to the Social Security Administration ("SSA") for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. Pursuant to Rule 25 of the Federal Rules of Civil Procedure, Carolyn W. Colvin automatically is substituted as the Defendant in the case. No further action is necessary to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I. PROCEDURAL HISTORY

Claimant filed an application for disability insurance benefits and supplemental security income on October 22, 2010, alleging a disability onset date beginning January 1, 2007. R. 16. The SSA initially denied the application on January 18, 2011, and upon reconsideration on April 5, 2011. *Id.* Claimant filed a timely request for an administrative hearing on April 5, 2011, which was held before an administrative law judge ("ALJ") on September 20, 2012. *Id.* Claimant appeared and testified at the hearing, and was represented by counsel. *Id.* Dr. Mark Oberlander, a medical expert, and James Lanier, a vocational expert, also appeared and testified at the hearing. *Id.*

The ALJ issued a written decision on October 11, 2012, finding Claimant not disabled under the Social Security Act. R. 13. At step one of the required five-step sequential evaluation process, the ALJ found Claimant had not engaged in substantial gainful activity since her alleged disability onset date of January 1, 2007. R. 18. At step two, the ALJ found Claimant had the severe impairments of bipolar disorder, panic disorder, dependent personality disorder, narcissistic personality disorder, anti-social personality disorder, and substance use and abuse. *Id.* At step three, the ALJ determined Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). R. 19.

The ALJ determined Claimant had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with the following nonexertional limitations: she is limited to performing only simple, repetitive, routine job tasks that require little independent judgment and involve only routine changes; and she must work primarily alone, having no

2

regular general public contact and only occasional contact with co-workers and supervisors. R. 20-21. At step four, the ALJ found Claimant unable to perform any past relevant work. R. 24. At step five, the ALJ found there were jobs existing in significant numbers in the national economy that Claimant could perform. R. 24-25. Accordingly, the ALJ concluded Claimant was not disabled under the Social Security Act. R. 26.

The Social Security Appeals Council denied Claimant's request for review on February 6, 2013 (R. 5-7), making the ALJ's opinion the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. Claimant seeks review in this Court pursuant to 42 U.S.C. § 405(g). *See Haynes v. Baumhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision, the Court may not "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Rather, the Court's review is limited to determining whether the decision is supported by substantial evidence and whether the ALJ applied the correct legal standards. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002).

Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). While the ALJ is not required to address "every piece of evidence or testimony in the record," the analysis "must provide some glimpse into the reasoning behind [the] decision to deny benefits." *Zurawski*

3

*v. Halter*, 245 F.3d 881. 889 (7th Cir. 2001). At a minimum, the ALJ must articulate his or her analysis "with enough detail and clarity to permit meaningful appellate review." *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

## III. ANALYSIS

Claimant argues that this matter should be reversed or remanded because the ALJ failed to properly evaluate and weigh the opinions of her treating physician, Dr. Nancy Schell. ECF No. 20. After reviewing the parties' briefs and the administrative record, the Court concludes that the ALJ did not explain sufficiently how she weighed the medical evidence supplied by Dr. Schell, and therefore, did not build the required logical bridge from the record evidence to her conclusion. Accordingly, remand is appropriate.

### A. The ALJ did not sufficiently explain how she weighed the medical evidence supplied by Claimant's treating physician.

Claimant argues that the ALJ erred in assigning reduced weight to the opinion of Claimant's treating physician, Dr. Schell. Specifically, Claimant contends that the ALJ discounted the treating physician's opinion without sufficient explanation. For the reasons discussed below, the Court agrees.

#### i. The ALJ did not apply the treating physician rule as required.

At issue in this case is the "treating physician" rule, 20 C.F.R. § 404.1527(c)(2). The treating physician rule "directs the administrative law judge to give controlling weight to the medical opinion of a treating physician if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence.'" *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) (quoting *Hofslien v. Barnhart*, 439 F.3d 375,

4

376 (7th Cir. 2006)). That is because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture" of a claimant's impairments and "bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." 20 C.F.R. § 404.1527(c).

If well-supported contradictory evidence is introduced, however, the treating physician's opinion is no longer entitled to controlling weight and it becomes another piece of evidence for the ALJ to weigh. *Id.* At that point, the treating physician rule requires the ALJ to weigh the medical opinion of the treating physician using various factors, including (1) whether the physician has examined the claimant; (2) whether a treatment relationship exists and the length, nature and extent of the treatment relationship; (3) whether the opinion is supported by relevant evidence; (4) whether the opinion is consistent with the record as a whole; (5) whether the physician is a specialist on the particular conditions alleged to be suffered by the claimant; and any other factors that may be relevant, 20 C.F.R. § 404.1527(c); *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009).

In this case, Dr. Schell, Claimant's treating psychiatrist, opined that Claimant had moderate restriction of activities of daily living; marked difficulties in maintaining social functioning; marked deficiencies of concentration, persistence or pace; and three repeated episodes of decompensation within a twelve month period, each at least two weeks long. R. 220. Dr. Schell's opinion satisfies the "paragraph B" criteria and supports a finding that Claimant is disabled. The ALJ, however, gave Dr. Schell's opinion reduced weight and instead adopted the opinions of the medical expert, Dr. Mark Oberlander, and the Disability Determination Service reviewing psychologist, Dr. Gregory Rudolph.

Because the ALJ did not give Dr. Schell's opinion controlling weight, she was required "to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss*, 555 F.3d at 556 (citing 20 C.F.R. § 404.1527(d)(2)). The ALJ did not sufficiently discuss these factors in the course of discounting Dr. Schell's opinion. Instead, the ALJ vaguely states that Dr. Schell's opinion is given "little, if any, weight . . . because while the doctor does have a treating relationship with the claimant, the history is quite brief; and, the doctor's opinion is not consistent with her own testimony or the other evidence on the record . . . ." R. 24. The ALJ's breezy dismissal of Dr. Schell's opinion is not supported by substantial evidence.

The ALJ's dismissive characterization of Dr. Schell's treating relationship with Claimant as "quite brief" is tenuous. Dr. Schell, a specialist in psychiatric disorders, treated Claimant beginning in May 2011 through the date of the hearing in September 2012. R. 218. There are hard medical records for six of Claimant's visits with Dr. Schell during that sixteen-month period with the first record dated September 2011. R. 205, 213-16. Dr. Schell's written response to the Medical Impairment Questionnaire indicates that she saw Claimant on other occasions as well. R. 18. ("first saw in May 2011 to present.").

Additionally, Dr. Schell is Claimant's most recent treatment provider, and therefore has the most current information about Claimant's condition. Even the medical expert conceded this. During his testimony, Dr. Oberlander was asked if he would "admit that Dr. Schell had a better opportunity to observe [Claimant] than you had?" to which he replied, "Absolutely." R. 283. Given Dr. Schell's specialty and the length and nature of the treating relationship, absent some serious flaw, the ALJ should have given more weight to her opinions than she gave them or

6

better explained the evidence upon which she relied to discount those opinions. In other words, the ALJ did not build a logical bridge to support her conclusion that Dr. Schell's opinion was entitled to little, if any, weight.

### ii. The ALJ erred in adopting Dr. Oberlander's medical opinion instead of Dr. Schell's medical opinion.

Despite Dr. Schell's longitudinal treatment history with Claimant, the ALJ instead adopted the medical opinion of Dr. Oberlander, who neither treated nor met Claimant prior to providing his medical opinion. He testified that he based his opinion that Claimant had moderate difficulties in social functioning largely upon Dr. Rebori's records and one visit with the Disability Determination Service reviewing psychologist, Dr. Rudolph. R. 279-80. ("I indeed relied most extensively on Dr. Rebori's assessment of functionality during that time period as well as the first consultative report by Dr. Rudolph, dated January 5, 2011.") Dr. Rebori's relevant records are from January and February 2007 and one appointment from July 2009. R. 137-41. In other words, Dr. Oberlander "relied most extensively" on records from early 2007 to support his opinion concerning Claimant's difficulties in social functioning in 2012 and he did not have the most recent medical records of Claimant's treating physician, Dr. Schell, from 2011 and 2012. R. 269.

During the hearing, Dr. Oberlander was handed a pile of medical records he had not yet reviewed. R. 270. Among these documents were Dr. Schell's most recent treatment records. R. 269-70. Those records reflected Dr. Schell's treatment of Claimant from July 10, 2012 through the date of the hearing in September 2012. R. 213-16. Dr. Schell was the only physician that treated the Claimant from April 2012 onward. When asked if he was capable of rendering an opinion as to the period from March 2011 onward, given that he was handed Dr. Schell's records

7

during his testimony, Dr. Oberlander replied: "I think I can render an opinion, and with the proviso that I have not seen[,] you know[,] the more detailed [records]." R. 273.

During cross-examination, Dr. Oberlander was asked four times if it was true that his opinion was not based on anything in Claimant's medical records after March 2011, and each time he evaded the question. Dr. Oberlander was asked, "And none of your opinions [were] based on anything in the records after March of 2011, is that correct?" He replied, "I'm sorry? Say that again." R. 280. The question was rephrased, and Dr. Oberlander responded, "No, that's not quite correct." *Id.* But when further pressed to specify which records he relied on after March 2011, he replied, "What is it that you're asking?" *Id.* When asked yet a third time to specify which records he relied on after March 2011 in forming his opinion, Dr. Oberlander replied that his opinion was based "on the entire record," "including the few notes of Dr. Stazek" but, he continued, "There is nothing very specific, counselor, in the records that I could point to." R. 281.

Under these circumstances, the ALJ did not adequately explain why Dr. Oberlander's opinion deserved more weight than Dr. Schell's, especially given that Dr. Oberlander did not see Dr. Schell's recent treatment records until the hearing and, instead, Dr. Oberlander relied primarily on records that were more than five years old by that time. Remand is appropriate where an ALJ relies upon state agency physicians' opinions that "were not based on a complete review or an accurate summary of the medical evidence" to contradict the opinions of Claimant's treating physicians (*Bellinghiere v. Astrue*, 2011 WL 4431023, at *8 (N.D. Ill. 2011)), or where the state agency physicians' opinions did not take subsequent medical records into account and were therefore not based on the entire medical record (*Staggs v. Astrue*, 781 F.Supp.2d 790, 794-95 (S.D. Ind. 2001)).

8

### iii. The ALJ's conclusion that Dr. Schell's records are inconsistent with other evidence of record because there are no other records during the time period in which Dr. Schell treated Claimant is not supported by substantial evidence.

The ALJ states that Dr. Schell's opinion is inconsistent with other evidence of record, but Dr. Schell was the only physician treating Claimant after April 2012. Prior to that, from September 2011 to March 2012, Claimant saw Dr. Stasek, a psychologist at Lake County Hospital, ten times. R. 268. Dr. Stasek's notes are consistent with Dr. Schell's records and describe symptoms of anxiety, depression, and panic attacks. R. 200-04. The ALJ mentions Dr. Stasek just once in her opinion, and it is only with regard to Dr. Oberlander's testimony that Claimant "had been seen by Dr. Stasek ten times from September 2011 through March 2012." R. 23.

The ALJ fails to discuss any of Dr. Stasek's findings, despite the fact that Dr. Stasek is deemed a "physician" in the sense of a medical expert with relevant expertise who treats the claimant. 20 C.F.R. §§ 404.1513(a), 404.1527(a)(2); *Bauer*, 532 F.3d. at 608. While an ALJ is not required to address every piece of evidence in the record, she "may not ignore an entire line of evidence that is contrary to [her] ruling." *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (internal citations omitted). "Otherwise, it is impossible for a reviewing court to tell whether the ALJ's decision rests upon substantial evidence." *Id.*, citing *Smith v. Apfel*, 231 F.3d 433, 438 (7th Cir. 2000).

The ALJ also did not specify which evidence she found to be inconsistent with Dr. Schell's opinion. A reviewing court should not have to speculate about what evidence in the record the ALJ found to be inconsistent with Dr. Schell's opinion and the nature of the supposed inconsistency.

9

With due deference given to the ALJ's decision, the logical bridge between the record evidence and the ALJ's decision to reject the opinions of Claimant's treating physician is missing. Although the ALJ decided that the treating physician's opinion was not entitled to controlling weight, it remained a piece of evidence for the ALJ to consider. *See Hofslien*, 439 F.3d at 377. It is not clear, however, why the ALJ gave reduced weight to Dr. Schell's opinion particularly in light of the Seventh Circuit admonishment that a contradictory opinion of a non-examining physician is not, by itself, sufficient for the ALJ to reject a treating physician's opinion. *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2006). The ALJ offered only conclusory statements that the opinions of Claimant's treating physicians were not entitled to controlling weight while the opinions of the non-treating State agency physicians, which supported a finding of "not disabled," were entitled to some weight without discussion of specific record evidence to support those conclusions.

### B. Upon remand, the ALJ should revisit the other issues raised in Claimant's brief as appropriate.

Claimant raises a number of other issues in her brief in support of summary judgment, including an assertion that the vocational expert's opinion regarding Claimant's employability was based on a flawed hypothetical. The Court already has determined that remand is appropriate so that the ALJ can properly address Dr. Schell's opinions. Therefore, the Court need not consider in depth the remaining issues Claimant has raised in her brief. The ALJ should revisit these issues as necessary upon remand.

## IV. CONCLUSION

For the reasons set forth above, Claimant's Motion for Summary Judgment (ECF No. 19) is granted, and the Commissioner's Motion for Summary Judgment (ECF No. 32) is denied. This matter is remanded to the Social Security Administration for further proceedings consistent with the Court's Memorandum Opinion and Order.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: August 6, 2015